El Juez Asociado Señor Rivera García
emitió la opinión del Tribunal.
Estos recursos nos brindan la oportunidad de expresar-nos sobre si el dueño de un bien que presuntamente se confiscó ilegalmente puede presentar una acción en daños y perjuicios contra el Estado dentro de la acción de impug-nación de confiscación. En ese contexto, el Departamento de Hacienda del Gobierno de Puerto Rico (parte peticiona-ria o el Estado) nos solicita que revisemos dos sentencias del Tribunal de Apelaciones en las que ese foro determinó que procedía tal acción en contra del Estado. Luego de ana-lizar con rigor el estado de Derecho aplicable, revocamos ambas determinaciones y resolvemos que dentro de una acción de impugnación de confiscación no se puede presen-tar una acción en daños y perjuicios en contra del Estado. De esta manera, hacemos valer el mandato legislativo con-tenido en la Ley Uniforme de Confiscaciones, infra.
La presente opinión atiende dos recursos consolidados por este Tribunal que presentan controversias de derecho *770 similares: el CC-2012-0620 y el CC-2012-0756.(1) A continuación dilucidamos los antecedentes tácticos que dan lu-gar a la presente controversia.
I
A. CC-2012-0620
La parte recurrente, Doble Seis Sport TV, Inc. (Doble Seis o los recurridos), es una corporación debidamente re-gistrada en el Departamento de Estado de Puerto Rico que se dedica a la operación de máquinas electrónicas de videojuegos.(2) Surge de los autos que el Departamento de Hacienda expidió a favor de Doble Seis unas licencias para la operación de esas máquinas.(3)
La controversia de este caso se origina cuando el 1 de febrero de 2011, la Junta de Confiscaciones del Departamento de Justicia notificó a los recurridos la confiscación de seis máquinas de juegos electrónicos ubicadas en el negocio Dólar (La Reina) de Juana Díaz, las cuales habían sido ocupadas el 19 de enero de 2011. Esa agencia determinó que Doble Seis infringió los Arts. 1 y 5 de la Ley 22-1997 y las Secs. 2040, 6094B-1 y 6140 de la Ley 120-1994 por no poseer las licencias correspondientes para operar dichas máquinas.
Ante este hecho, el 3 de marzo de 2011 Doble Seis y el Sr. Milton Hernández Isern (como Presidente y accionista principal de la empresa) presentaron una demanda sobre impugnación de confiscación. En la misma, alegaron que la confiscación fue ilegal, por lo que exigieron la devolución de las máquinas confiscadas o el pago de su equivalente en *771 dinero.(4) Además, incluyeron una causa de acción por daños y perjuicios en la que solicitaron $60,000 para Doble Seis por la alegada pérdida de ingresos, y $75,000 para el codemandante, señor Hernández Isern, por las angustias mentales sufridas.(5)
Así las cosas, el Estado presentó una Moción de Desestimación Parcial de la Demanda, en la que sostuvo que procedía la desestimación de la acción en daños y perjuicios. Argüyó que le cobijaba la inmunidad soberana bajo las disposiciones de la Ley de Pleitos contra el Estado, infra, ya que las imputaciones de alegada negligencia versaban sobre actos realizados por los funcionarios en cumplimiento de una ley o la imposición de cobro de contribuciones. Alegó que por ello, el Tribunal de Primera Instancia (TPI) carecía de jurisdicción sobre la materia. De otra parte, argumentó que la Ley Uniforme de Confiscaciones, infra, no provee para una acción en daños y perjuicios, pues los remedios disponibles para situaciones de esta naturaleza se encuentran delimitados en la propia ley.
Ante ello, el 27 de julio de 2011 los recurridos se opusieron a la solicitud de desestimación parcial de la demanda. Alegaron que la acción en daños no se fundamentaba en el hecho de que el Estado exigió las contribuciones correspondientes, sino al amparo del Art. 1802 del Código Civil de Puerto Rico, 31 LPRA sec. 5141. En cuanto a esto, esbozaron que
[...] cabe destacar que conforme a las alegaciones de la demanda!,] la acción de daños y perjuicios no está predicada en la imposición y cobro de contribuciones, sino, en la ocupa *772 ción ilegal de la propiedad de la parte demandante. (Énfasis en el original).(6)
Su contención principal era que las máquinas se ocupa-ron ilegalmente, ya que los funcionarios no tenían una or-den judicial que los autorizara a ello, y que no existía mo-tivo fundado para creer que se estaban utilizando de forma contraria a la ley. Añadieron que si bien la Ley Uniforme de Confiscaciones, infra, no concedía una acción en daños, tampoco privaba de la misma.
Examinadas ambas mociones, el foro de primera instancia desestimó la acción en daños y perjuicios mediante sentencia parcial emitida el 6 de septiembre de 2011. En esencia, resolvió que la reclamación en daños y perjuicios no estaba autorizada en virtud de la inmunidad soberana, esto en conformidad con el Art. 6(a) de la Ley de Pleitos contra el Estado, infra.(7)
Inconforme con tal determinación, Doble Seis presentó un recurso de apelación ante el Tribunal de Apelaciones. En este apuntó que su reclamación por los daños y perjuicios se amparaba en la conducta presuntamente negligente de los funcionarios del Estado en el desempeño de sus funciones.(8) Luego de los trámites de rigor, el foro apelativo intermedio emitió una sentencia en la que razonó que, conforme a lo dispuesto en la Regla 10.2 de Procedimiento Civil, 32 LPRAAp. V, el TPI tenía la obligación de dar por *773 ciertas todas las alegaciones fácticas de la demanda e in-terpretarlas de la manera más favorable a los recurridos. Por ello, entendió que el foro primario debió colegir que las máquinas no se utilizaron de manera ilegal, y que las ac-tuaciones culposas o negligentes de los empleados del Es-tado en el desempeño de sus funciones causaron daños y angustias mentales a estos.
B. CC-2012-0756
Al igual que los hechos descritos anteriormente, en este caso también se le notificó a Doble Seis la confiscación de cinco máquinas de su propiedad ocupadas el 20 de enero de 2011 en el negocio Dólar y Algo Extra, en el municipio de Bayamón. Así las cosas, el 3 de marzo de 2011 Doble Seis y el señor Hernández Isern presentaron una demanda sobre impugnación de confiscación y daños y perjuicios en contra del Departamento de Hacienda del Gobierno de Puerto Rico. En síntesis, expusieron similares argumentos a los contenidos en la demanda de impugnación de confiscación que se presentó en el recurso CC-2012-0620. En este caso solicitaron $50,000 en daños para Doble Seis por la alegada pérdida de ingresos y $75,000 para el codemandante, señor Hernández Isern, por las angustias mentales sufridas. Ante estos argumentos, el Estado presentó una moción de desestimación parcial de la demanda en la que esgrimió los mismos fundamentos de derecho que expuso en la moción de desestimación que presentó en el caso CC-2012-0620.(9)
Atendida la moción, el foro de instancia desestimó la acción en daños y perjuicios al señalar como fundamento que al Estado le cobijaba la inmunidad soberana. Argu- *774 mentó que Doble Seis le estaba reclamando al Estado por actos que ejercieron sus funcionarios en el cumplimiento de una ley. Además, razonó que dentro del mecanismo pro-cesal de impugnación de confiscación, los únicos remedios disponibles para el demandante, si decretaban ilegal la confiscación, era la devolución de la propiedad ocupada o el importe de la tasación si se dispuso de la misma.
En desacuerdo con ese dictamen, Doble Seis recurrió ante el Tribunal de Apelaciones el 12 de marzo de 2012. Luego de varios incidentes procesales, el 19 de julio de 2012, ese foro emitió una sentencia en la cual concluyó que en esa etapa procesal existía controversia relacionada a si los funcionarios del Estado actuaron de acuerdo con sus facultades y obligaciones o si, por el contrario, intervinie-ron con culpa o negligencia cuando se incautaron de las máquinas. Sin prejuzgar los méritos de la controversia, concluyó que los apelantes podrían tener una causa de ac-ción contra el Estado al amparo del Art. 1802 del Código Civil de Puerto Rico, supra. Esto, al analizar las alegacio-nes de la demanda conforme a la Regla 10.2 de Procedi-miento Civil, supra.
Inconforme con estos dictámenes, el 22 de agosto de 2012, el Estado recurrió ante nos.(10) En ambos casos, el Estado plantea los mismos señalamientos de error. Estos son:
[...] Erró el Tribunal de Apelaciones al no desestimar la acción en daños y perjuicios a pesar de la aplicabilidad de la inmu-nidad soberana del Estado.
[...] Erró el Tribunal de Apelaciones al no desestimar la acción en daños y perjuicios apoyada en el acto de confiscación, aun cuando la Ley de Confiscaciones provee remedios exclusivos que no contemplan la compensación en daños. Petición de cer-tiorari, pág. 9.
*775 Según este marco fáctico, pasemos a exponer el estado de derecho aplicable a la controversia que nos ocupa.
II
La interrogante que debemos dilucidar en este caso se circunscribe a determinar si, dentro de un procedimiento de impugnación de confiscación, el dueño de un bien que presuntamente se confiscó ilegalmente puede presentar una causa de acción por daños y perjuicios en contra del Estado. Ahora bien, para propósitos de enmarcar la contro-versia dentro de la normativa que regula lo concerniente a la incautación de máquinas de entretenimiento, procede-mos a discutir varios preceptos de Derecho. Primeramente, examinaremos el alcance de los registros permitidos en los negocios estrechamente regulados. Luego, expondremos las disposiciones pertinentes de la Ley de Juegos de Azar, infra, para, finalmente, interpretar la Ley de Confiscacio-nes de 2011, infra, acorde con la controversia que se nos presenta.
A. Registros en los negocios estrechamente regulados
Es conocido que la Sec. 10 del Art. II de la Constitución de Puerto Rico dispone que
[solo] se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse. Evidencia obtenida en violación de esta sección será inadmisible en los tribunales. Art. II, Sec. 10, Const. ELA, LPRA, Tomo 1, ed. 2008, pág. 326.
En nuestro ordenamiento jurídico, esta protección cons-titucional se considera un valor comunitario de indiscuti-ble jerarquía y, según hemos hilvanado jurisprudencial- *776 mente, el mismo consagra varios propósitos fundamentales. Acarón et al. v. D.R.N.A., 186 DPR 564, 573 (2012); Pueblo v. Valenzuela Morel, 158 DPR 526, 539 (2003). Uno de esos propósitos es disuadir y desalentar a los funcionarios del orden público de incurrir en conducta que viole esta disposición, para así preservar la integridad judicial y evitar la complicidad de los tribunales con respecto a actos que infrinjan la Constitución. Id. El criterio fundamental al evaluar si una actuación gubernamental ha transgredido las limitaciones impuestas por nuestra Constitución es la razonabilidad, la cual se determina mediante un balance de los intereses presentes según la totalidad de las circunstancias involucradas en la actuación gubernamental impugnada. Pueblo v. Díaz, Bonano, 176 DPR 601, 613 (2009). Como regla general, todo registro, allanamiento o incautación que se realice, sea de índole penal o administrativa, es irrazonable per se si no media una orden judicial previa. E.L.A. v. Coca Cola Bott. Co., 115 DPR 197, 207 (1984). En estos casos, le corresponde al Estado demostrar su validez. Blassini et als. v. Depto. Rec. Naturales, 176 DPR 454, 462 (2009); Pueblo v. Serrano Reyes, 176 DPR 437 (2009).
Ahora bien, la Sec. 6.1 de la Ley Núm. 170 de 12 de agosto de 1988, conocida como Ley de Procedimiento Administrativo Uniforme (LPAU), 3 LPRA sec. 2191, autoriza que las agencias realicen registros administrativos, siempre que se obtenga una orden judicial previa, excepto en tres ocasiones en las cuales no es necesario obtenerla: (1) en casos de emergencia; (2) en casos donde se efectúa un registro al amparo de la facultad para conceder licencias o permisos, y (3) en casos en los cuales se pueda obtener la información a simple vista y desde un lugar público. El registro que se realiza en este contexto está sujeto a las limitaciones que se encuentran dentro del marco estatuido por la LPAU y la Constitución, en la medida en que está *777 condicionado a ciertos criterios. Acarón et al. v. D.R.N.A., supra. Así, en Pueblo v. Ferreira Morales, 147 DPR 238, 253 (1998), expresamos que la razonabilidad del registro administrativo de una actividad estrechamente reglamentada, debe cumplir con los requerimientos siguientes:
(1) [D]ebe existir un interés estatal sustancial que funda-mente el esquema regulador;
(2) el esquema regulador promueve el interés del Estado; y
(3) el esquema regulador de la agencia debe constituir un sustituto constitucional adecuado a la orden judicial en cuanto a certeza y regularidad de la intervención.
En cuanto a este tipo de procedimiento, la See. 6.4 de la referida legislación dispone que
[l]as agencias podrán realizar inspecciones e investigaciones conjuntas con el objeto de ampliar y facilitar su capacidad de fiscalizar el cumplimiento de las leyes especiales por el cual deben velar. 3 LPRA see. 2194.
En ese contexto, existen empresas y negocios que se encuentran ampliamente reguladas por el Estado. Para que una empresa se considere como una de estas
1) debe existir un interés gubernamental sustancial que fundamente el esquema regulador bajo el cual la inspección en cuestión se realiza;
2) la realización de la inspección sin orden debe ser necesa-ria para adelantar el interés gubernamental, y
3) el programa de inspección que contenga el estatuto debe constituir un sustituto constitucionalmente adecuado a la or-den judicial en cuanto a certeza y regularidad. Pueblo v. Ferreira Morales, supra, pág. 253.
Como vemos, llevar a cabo registros de negocios estre-chamente reglamentados se aparta de la norma general respecto a la exigencia de causa probable y de una orden judicial previa. Pueblo v. Ferreira Morales, supra; Pueblo v. Cedeño Laclaustra, 157 DPR 743, 774-775 (2002). Esto es así debido a que
*778 [e]n tales circunstancias, resultaría oneroso y, por consi-guiente, irrazonable obligar al Estado a que obtenga una or-den judicial basada en causa probable para que pueda efectuar de forma válida un registro administrativo. Pueblo v. Ferreira Morales, supra, pág. 255.
Recientemente, el Tribunal Federal para el Distrito de Puerto Rico atendió una controversia en Rivera Corraliza v. Puig Morales, 2013 WL 3755607 (2013). En ese caso se confiscaron unas máquinas de juegos y correspondió deter-minar si la confiscación violó la Primera, Cuarta, Octava y Vigesimocuarta enmienda de la Constitución de Estados Unidos. Al atender el asunto, esa Curia reconoció que existe un interés apremiante por parte del Estado para justificar un régimen que regule la industria de las máqui-nas de juegos. Por esto, determinó que el registro satisfizo los requisitos para proceder sin una orden judicial. En ese contexto, el Tribunal Federal expresó:
Announcing searches ahead of time would thwart the Commonwealth’s enforcement of its laws, because machines can be altered or removed before an announced inspection, thus concealing illegal actions. Unannounced inspections avoid this problem. Additionally, the defendants have a reduced expectation of privacy in their gambling machines because of the pervasive regulation of gambling. The defendants have chosen to run a business that the Commonwealth monitors closely. Their machines are public commodities-requiring licensure to operate and are placed and located in an open place of business, not private homes. Defendants cannot expect privacy in their public accommodations, which they openly offer to the public and agree to maintain according to stringent Commonwealth guidelines. Rivera Corraliza v. Puig Morales, supra.
Así también, el foro federal justificó la incautación in-mediata de las máquinas. Respecto a esa determinación expresó:
Allowing the machines to remain in service would expose citizens to the risk of unfair operation, which the law seeks to avoid. Protecting against this immediate harm justifies seizing *779 the machines immediately, while allowing the owner of the machines to appeal the seizure and prove the machines’ legality, if possible. Calero Toledo v. Pearson Yacht Leasing Co., 416 US 663, 678-679 (1974).
B. Ley de Juegos de Azar
La Sec. 3 de la Ley Núm. 11 de 22 de agosto de 1933, según enmendada,(11) 15 LPRA sec. 82 et seq., conocida como Ley de Juegos de Azar, define y reglamenta las máquinas de juego de azar en nuestra jurisdicción de la manera siguiente:
La introducción, manufactura, posesión, uso o funcionamiento de máquinas vendedoras que sean utilizadas para fines de juego de azar o lotería y de las conocidas con el nombre de traganíqueles y de cualquier otra clase que sean utilizadas con fines de juego de azar o lotería, en cualquier forma en que fueren manipuladas, o cualquier sustituto de las mismas, será considerada ilegal y su introducción, manufactura, uso, posesión o funcionamiento queda prohibido. Serán consideradas máquinas de juegos de azar, aquellas que contengan alguno de los siguientes mecanismos o dispositivos:
(1) Un dispositivo para aceptar apuestas que son registra-das en un contador dentro de la máquina.
(2) Un mecanismo para otorgar premios de dinero en efec-tivo al jugador, un dispensador de monedas que otorga el pre-mio directamente al jugador, o metro de salida que pueda registrar o acreditar pagos en efectivo al jugador.
(3) Un dispositivo de bloqueo (knock-off switch) para borrar los créditos una vez le son pagados al jugador ganador.
(4) Un dispositivo o mecanismo que haga a la máquina fun-cionar con total autonomía del jugador por un ciclo o espacio de tiempo predeterminado y que provoca que el resultado del juego o de la operación que la maquina realiza sea decidido por la suerte o el azar.
Todas las máquinas que no contengan estos mecanismos o dispositivos serán consideradas legales y se clasificarán como “máquinas de entretenimiento de adultos” [...]
Por otra parte, la Sec. 3A de la Ley de Juegos de *780 Azar, 15 LPRA sec. 82a, define las máquinas de entretenimiento para adultos como las que
[...] no contienen los mecanismos o dispositivos característi-cos de las máquinas de juegos de azar según establecidos por el Tribunal Supremo de Puerto Rico y la see. 82 de este título.
En cuanto a este tipo de máquinas, la See. 4 de la mencionada ley, 15 LPRA sec. 83, dispone que el Secretario de Hacienda
[...] tendrá la obligación de hacer cumplir y velar por el cumplimiento de todas las disposiciones de las leyes vigentes, en torno a las máquinas de entretenimiento de adultos. De igual manera, establecerá por reglamento las consideraciones necesarias para fiscalizar adecuadamente su manejo y tribu-tación, así como el lugar donde estas podrán ser ubicadas. Es-tablecerá el procedimiento necesario para que toda máquina a ser autorizada como máquina de entretenimiento para adul-tos, sea evaluada personalmente y certificada como máquina de entretenimiento para adultos por los agentes del Negociado de Bebidas y Licencias del Departamento de Hacienda. Deter-minará así mismo los requisitos y condiciones para la denega-ción, suspensión o revocación de una licencia.
Sin embargo, la See. 2 de la Ley Núm. 221 de 15 de mayo de 1948, según enmendada, 15 LPRA sec. 71, creó una excepción a esta prohibición. A esos efectos, autorizó y legalizó la adquisición, el arrendamiento, la transportación, la introducción, la posesión, el uso, el mantenimiento y el funcionamiento de las máquinas conocidas como "tragamonedas”, única y exclusivamente cuando la Compañía de Turismo de Puerto Rico o un concesionario autorizado las introduzca. Esta máquinas se deben ubicar y operar en las salas de juego autorizadas, según la franquicia que el Comisionado de Instituciones Financieras haya expedido.
Nuestra jurisprudencia ha esbozado los criterios que caracterizan el juego de azar ilegal. A estos efectos, se toma en consideración: (1) el pago o prestación que se hace *781 o se promete para participar en el juego de azar; (2) el azar o suerte por medio del cual se gana el premio y, por último, (3) el premio que constituye algo de valor pecuniario que la persona recibe directamente u obtiene el derecho a recibir. Boys and Girls Club v. Srio. de Hacienda, 179 DPR 746, 759 (2010). Véase, también, Sun Design Video v. E.L.A., 136 DPR 763, 768 (1994).
En el ejercicio de la facultad que le confiere la Ley de Juegos de Azar, el Secretario de Hacienda promulgó el Reglamento Núm. 7437 de 14 de diciembre de 2007 para suplementar ciertas disposiciones del Código de Rentas Internas de 1994.(12) Este tiene como propósito establecer los requisitos y procedimientos necesarios para otorgar las licencias requeridas para operar máquinas de entretenimiento. En específico, el Art. 2041-1 del referido Reglamento dispone:
[...] Derechos de licencia a negocios donde operen máquinas de pasatiempo.- Con sujeción a las exclusiones dispuestas en el Artículo 2040-l(b), toda persona que opere un negocio, esta-blecimiento o local donde operen 4 o más máquinas o artefac-tos de pasatiempo manipulados con monedas o fichas, o mesas de billar, pagará un impuesto anual por concepto de derechos de licencia por cada negocio, establecimiento o local, por la cantidad de $200.
Por su parte, el inciso (a) de la Sec. 3050.02 de la Ley Núm. 1-2011, conocida como Código de Rentas Internas, 13 LPRA see. 31712, aplicable al momento en que se *782 incautaron las máquinas de este caso,(13) establece el pago de un impuesto anual en concepto de derechos de licencias para máquinas operadas con monedas, cuyo pago dependerá de la máquina de que se trate. La mencionada sección dispone el pago de impuestos por las cantidades siguientes:
(1) Por cada vellonera, por cada mesa de billar, por cada má-quina o artefacto de pasatiempo manipulado con monedas o fichas de tipo mecánico, electrónico, o de video para niños y jóvenes cuando las habilidades o destrezas del jugador afectan significativamente el resultado final de la partida — $100
(2) Por cada máquina de video y juego electrónico manipulado con monedas o ficha que contengan material de violencia o de índole sexual cuando las habilidades o destrezas del jugador afectan significativamente el resultado final de la partida —$400
(3) Por cada máquina de entretenimiento para adultos según definidas en las sees. 82 et seq. del Título 15, conocidas como la “Ley de Juegos de Azar” — $2,250
Cabe destacar que el Art. 2040-1 del Reglamento Núm. 7437, supra, establece que no será necesario exhibir la licencia en cada máquina, pero debe estar disponible en el negocio donde radiquen para que los agentes del Departamento de Hacienda la inspeccionen. Además, cada máquina llevará adherido al lado derecho superior un marbete como medio de identificación, el cual, bajo ninguna circunstancia, se removerá de la máquina asignada.
Por otro lado, la Sec. 5A de la Ley de Juegos de Azar, 15 LPRA sec. 84a, establece cuáles serán las multas y penalidades por violar esta ley, y en ese contexto dispone:
(a) Multa administrativa — El Secretario podrá imponer multa administrativa al dueño en una cantidad no menor de cinco mil dólares ($5,000) ni mayor de diez mil dólares ($10,000) por cada violación a las sees. 82 a 84a de este título.
*783 (b) Penalidades—
(1) Todo dueño de máquinas de entretenimiento para adultos o cualquier otra persona, operador o asistente a un negocio o establecimiento que introduzca en dicho negocio o use o trate de usar en el mismo, los artefactos de juego descri-tos en la see. 82 de este título consideradas como máquinas de juegos de azar, será culpable de un delito menos grave y si fuere convicto será castigado con multa no menor de doscien-tos dólares ($200) ni mayor de cuatrocientos dólares ($400) o con pena de reclusión por un período de tiempo no menor de treinta (30) días ni mayor de sesenta (60) días o ambas penas a discreción del tribunal. Si se tratare de una segunda convic-ción se le impondrá una pena de multa no menor de trescien-tos dólares ($300) ni mayor de quinientos dólares ($500) y una pena de reclusión por un período de tiempo no menor de se-senta (60) días ni mayor de noventa (90) días. Cualquier con-vicción subsiguiente se le impondrá una pena de multa fija de quinientos dólares ($500) y reclusión por un periodo de tiempo de seis (6) meses.
(2) Toda persona que infringiere alguna de las disposicio-nes de las sees. 82 a 84a de este título o de los reglamentos promulgados por el Secretario será, si fuere convicta, senten-ciada con una pena de multa fija de quinientos dólares ($500) o una pena de reclusión por un período de tiempo no menor de dos (2) meses ni mayor de seis (6) meses o ambas penas a discreción del tribunal.
Y añade que
[(Independientemente de las penalidades prescritas en las sees. 82 a 84a de este título, el Secretario confiscará y dispon-drá de cualquier máquina de entretenimiento de adultos que opere sin licencias, o con una licencia expirada o con una li-cencia emitida para otra máquina. (Enfasis nuestro).
Así, también, la See. 6140 del Código de Rentas Internas de Puerto Rico de 1994 (13 LPRA ant. see. 8140), vigente al momento de ocurrir la confiscación de las máquinas que se ocuparon en este caso, dispone que el Secretario de Hacienda está facultado para examinar bienes, locales o cualquier otro material relacionado con las actividades sujetas a los impuestos y derechos, así como a confiscar o destruir cualquier máquina que se considere *784 ilegal según la Ley de Juegos de Azar. Específicamente, el inciso (G) de esta sección establece que el Secretario de Hacienda puede confiscar y vender en pública subasta o destruir
[cjualquier máquina o artefacto de pasatiempo manipulado con monedas o fichas, en los casos de reincidencia en la de-mora del pago de los derechos de licencia. Además [,] podrá confiscar y destruir cualquier máquina o artefacto de pasa-tiempo operado con monedas o fichas cuya operación sea ilegal de conformidad con lo dispuesto en las secs. 71 et seq. del Título 15, conocidas como “Ley de Juegos de Azar”. (Enfasis nuestro). 13 LPRA ant. sec. 8140(G).
C. Ley de Confiscaciones
Según definimos en Rodríguez Ramos v. E.L.A., 174 DPR 194, 202 (2008), la confiscación es “[e]l acto de ocupación que lleva a cabo el Estado de todo derecho de propiedad sobre cualesquiera bienes que hayan sido utilizados en relación con la comisión de ciertos delitos”. Véase además, Centeno Rodríguez v. E.L.A., 170 DPR 907 (2007). En Mapfre v. ELA, 188 DPR 517 (2013), señalamos que la confiscación es un procedimiento estatutario que actúa como una sanción penal adicional contra los criminales. Véase, también, Coop. Seg. Múlt. v. E.L.A., 180 DPR 655, 664 (2011).
Como sabemos, existe una modalidad confiscatoria denominada in rem. Esta es una acción civil que se dirige contra la cosa misma y no contra el dueño de la propiedad, poseedor, encargado, o cualquier otra persona con interés legal sobre el bien. Mapfre v. ELA, supra, pág. 525; BBV v. E.L.A., 180 DPR 681, 686 (2011). Los elementos necesarios para determinar si procede una confiscación civil son la existencia (1) de prueba suficiente y preponderante de que se ha cometido un delito, y (2) de un nexo entre la comisión del delito y la propiedad confiscada. Díaz Ramos v. E.L.A., supra, pág. 203; Suárez v. E.L.A., 162 DPR 43, 52 (2004). Este tipo de confiscación in rem se *785 puede efectuar antes de que se presente una acusación en contra de la persona o que se haga una declaración de culpabilidad o absolución. íd., pág. 54. Sin embargo, para sos-tenerla, le corresponde al Estado demostrar que la propiedad confiscada se utilizó en una actividad delictiva. íd.
En cuanto a estos procedimientos, es necesario dirigirnos a la Ley Núm. 119-2011 (34 LPRA sec. 1723 et seq.), que derogó la Ley Núm. 93 de 13 de julio de 1988, según enmendada, conocida como Ley Uniforme de Confiscaciones de 1988, para establecer la Ley Uniforme de Confiscaciones de 2011. El Art. 30 de esta ley indica que comenzó a regir inmediatamente después de su aprobación y su aplicación es retroactiva. 34 LPRA sec. 1724 n.
En el Art. 9 de la precitada legislación se menciona cuál es la propiedad que estará sujeta a ser confiscada a favor del Gobierno de Puerto Rico. Esta es,
[...] toda propiedad que resulte, sea producto o se utilice, durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se autorice la confiscación, cuando tales delitos graves y menos graves se encuentren ti-pificados en el Código Penal de Puerto Rico, en las leyes de sustancias controladas, de armas y explosivos, en las leyes contra el crimen organizado, en las leyes de juegos prohibidos, bebidas alcohólicas, leyes fiscales, leyes contra la apropiación ilegal de vehículos, leyes de vehículos y tránsito y de embar-caciones; así como en otras leyes y en aquellos estatutos con-fiscatorios en los que por ley se autorice la confiscación. (Én-fasis nuestro). 34 LPRA sec. 1724f.
De acuerdo con el Art. 10 de la Ley Uniforme de Confiscaciones de 2011 (34 LPRA sec. 1724g), la ocupación de la propiedad sujeta a confiscación la llevará a cabo la agencia o el funcionario a cargo de la implantación de la ley, policías o agentes del orden público, mediante la orden de un magistrado o tribunal competente, o sin previa orden del tribunal, en los casos siguientes:
(a) Cuando la ocupación se efectúa mientras se lleva a cabo un arresto;
*786 (b) cuando la ocupación se efectúa en virtud de una senten-cia judicial, o
(c) cuando la propiedad a ocuparse haya sido utilizada, re-sulte o sea el producto de la comisión de cualquiera de los delitos, leyes o estatutos confiscatorios que se expresan en [el Art. 9 de la Ley Uniforme de Confiscaciones de 2011]. (Enfasis nuestro).
Así, también, el Art. 15 de la Ley de Confiscaciones de 2011 (34 LPRA Sec. 1724l), dispone el procedimiento que debe seguir toda persona que desee impugnar la validez de una confiscación. A esos efectos, se deberá impugnar la confiscación dentro de los treinta días siguientes a la fecha en que se reciba la notificación, mediante la presentación de una demanda en contra del Estado Libre Asociado de Puerto Rico y del funcionario que autorizó la ocupación. Además, se deberá emplazar al Secretario de Justicia dentro de los quince días siguientes a la fecha en que se presentó la demanda. La demanda que al amparo de esta ley se autoriza, está sujeta estrictamente a los términos siguientes:
[E]l Tribunal ante el cual se haya radicado el pleito deberá adjudicarlo dentro de término de seis (6) meses contados desde que se presentó la contestación a la demanda, a menos que este término sea renunciado o ampliado con el consentimiento escrito de todas las partes y por causa justificada, por un tér-mino que no excederá de treinta (30) días adicionales; se pre-sumirá la legalidad y corrección de la confiscación indepen-dientemente de cualquier otro caso penal, administrativo o cualquier otro procedimiento relacionado a los mismos hechos. El demandante tiene el peso de la prueba para derrotar la legalidad de la confiscación. El descubrimiento de prueba se llevará a cabo dentro de los primeros treinta (30) días conta-dos a partir de la contestación a la demanda y no se extenderá a las declaraciones juradas que obren en el expediente del fiscal hasta que se tenga derecho a las mismas en alguna acción penal que exista relacionada a los hechos de la confiscación.
Es necesario señalar que el Art. 19 de la referida ley, 34 LPRA sec. 1724p, establece los remedios disponibles en caso de que se decrete ilegal la confiscación realizada por el Estado. En específico, dicho precepto señala que
*787 [e]n aquellos casos en los que el tribunal decrete la ilegalidad de una confiscación, la Junta devolverá la propiedad ocupada al demandante. Cuando haya dispuesto de la misma, el Go-bierno de Puerto Rico le pagará el importe de la tasación al momento de la ocupación o la cantidad de dinero por la cual se haya vendido, la que resulte mayor, más el interés legal preva-leciente, de conformidad con las Reglas de Procedimiento Civil, según enmendadas, tomando como base el valor de tasación, a partir de la fecha de la ocupación. (Enfasis nuestro).
Tras examinar el marco jurídico que precede, pasemos al análisis y discusión de la controversia que tenemos ante nuestra consideración.
III
Primeramente, debemos remitirnos al Art. 14 del Código Civil de Puerto Rico, 31 LPRA sec. 14, que dispone que “[c]uando la ley es clara libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu”. Los principios de hermenéutica de nuestro ordenamiento sirven de base cuando los tribunales están llamados a interpretar las leyes. Brau, Linares v. ELA et als., 190 DPR 315, 338 (2014). En ese ejercicio, de primera intención se debe determinar si el lenguaje de la ley es simple y preciso con relación a la controversia. S.L.G. Solá-Moreno v. Bengoa Becerra, 182 DPR 675, 691 (2011). Pues, sabemos, que no hay necesidad de recurrir al subterfugio de indagar más allá de la ley para cumplir con su propósito legislativo cuando su texto es claro. San Gerónimo Caribe Project v. Registradora, 189 DPR 849, 866 (2013); Asoc. Fcias. v. Caribe Specialty et al. II, 179 DPR 923, 938 (2010).
Cabe señalar, además, que la función de la Rama Judicial no es legislar, sino interpretar las leyes que aprueba la Rama Legislativa y constatar que estas no riñan con lo establecido en la Constitución. Marbury v. Mad *788 ison, 5 US 137 (1803); San Gerónimo Caribe Project v. Registradora, supra, pág. 867. Pues, le corresponde a la Asamblea Legislativa y a los legisladores electos que allí sirven determinar cuál debe ser la política pública de nuestras leyes. AAR, Ex parte, 187 DPR 835 (2013), citando a Delgado, Ex parte, 165 DPR 170, 192 (2005).
En los presentes casos consolidados, el Estado señala que el foro intermedio debió desestimar la causa de acción por daños y perjuicios incoada por la parte demandante, Doble Seis, porque le cobijaba la inmunidad soberana. Asi-mismo, señaló que la Ley Uniforme de Confiscaciones no provee ese tipo de acción. Pasemos a evaluar ambos señalamientos.
Como sabemos, el Art. 1802 del Código Civil de Puerto Rico, supra, dispone que “[e] 1 que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado”. Conforme a esta disposición, se le impone responsabilidad a una persona por daños y perjuicios cuando el demandante demuestra, mediante preponderancia de la prueba: (1) que ha habido una acción u omisión de parte; (2) que ha mediado negligencia, y (3) que existe un nexo causal entre la acción u omisión de la parte y el daño sufrido. García v. E.L.A., 163 DPR 800, 809 (2005). En este caso, los peticionarios incoaron una acción en daños y perjuicios por los alegados daños que sufrieron como consecuencia de la ocupación realizada por el Estado. En este punto, el Estado presentó como defensa que no respondía por los daños alegados por Doble Seis debido a que le cobijaba la inmunidad soberana.
La doctrina de inmunidad del soberano que prevalece en nuestro ordenamiento jurídico sostiene que se requiere el consentimiento del Estado para que se puedan instar procedimientos judiciales en su contra. Guar diola Álvarez v. Depto. de la Familia, 175 DPR 668, 678 (2009); Berríos Román v. E.L.A., 171 DPR 549, 555 (2007); Defendini Collazo et al. v. E.L.A., Coito, 134 DPR 28, 40 (1993). *789 Hace varias décadas se aprobó la Ley Núm. 104 de 29 de junio de 1955, según enmendada, conocida como la Ley de Pleitos contra el Estado, 32 LPRA sec. 3077 et seq. Mediante dicho estatuto, el Estado consintió en ser demandado en daños y perjuicios por las actuaciones y omisiones culposas o negligentes de sus funcionarios, empleados o agentes, mientras estén ejerciendo sus funciones. Berríos Román v. E.L.A., supra, pág. 556. La misma expone una renuncia parcial del Estado a su inmunidad soberana, pues autoriza la presentación de demandas en su contra en las circunstancias establecidas en la referida ley. ELA v. Martínez Zayas, 188 DPR 749, 760 (2013). En ese sentido, los estatutos de esta naturaleza son de interpretación restrictiva en favor del Estado. Rosario Cartagena v. E.L.A., 101 DPR 620, 631 (1973). Hemos reconocido que esta ley beneficia tanto al ciudadano perjudicado como al funcionario, ya que su intención es que el Estado responda por los actos y las omisiones de los funcionarios y agentes especia-les “en las mismas circunstancias y condiciones en que sería responsable un ciudadano particular”, siempre y cuando se cumpla con las condiciones impuestas por ese estatuto. Zambrana Maldonado v. E.L.A., 129 DPR 740, 754 (1992).
No obstante, como explicaremos más adelante, en estos recursos no nos corresponde resolver si ciertos funcionarios actuaron negligentemente en el cumplimiento de sus fun-ciones cuando se efectuó la ocupación de las máquinas de Doble Seis. Por el contrario, la controversia que atendemos es determinar si procede que quien impugne la confisca-ción de su propiedad porque alegue que su ocupación fue ilegal también presente en ese procedimiento una reclama-ción en daños y perjuicios. Evaluemos este particular.
La intervención e incautación que hizo el Estado en este caso está inexorablemente ligada a la obligación que le im-ponen las leyes y los reglamentos al Secretario de Hacienda de inspeccionar y fiscalizar los lugares que poseen todo tipo de máquinas de pasatiempo. Como ya discutimos, *790 al Secretario de Hacienda se le han conferido amplias fa-cultades para fiscalizar el cumplimiento de los requisitos y procedimientos establecidos para el negocio y la industria de los juegos de azar. En ese sentido, el legislador le ha delegado el poder de reglamentar, investigar y asegurar que las máquinas de entretenimiento para adultos operen conforme a la ley.
De esta forma, el Secretario de Hacienda tiene la facultad inherente y el deber ministerial de asegurar que los negocios donde operan máquinas de entretenimiento para adultos lleven a cabo los procedimientos adecuados y cum-plan rigurosamente con los requisitos que exige la ley. Hemos reiterado que la industria de las máquinas de juegos para adultos es una actividad estrechamente regulada. Véase Rivera Corraliza et al. v. Puig et al., supra. Así también, recordemos que la Ley Uniforme de Confiscaciones autoriza al Estado a confiscar toda propiedad que sea uti-lizada con relación a la comisión de delitos tipificados en las leyes de juegos prohibidos o en las leyes fiscales, es decir, propiedades tales como las que se ocuparon en este caso si operan en contravención a la ley. Claro está, dicha confiscación queda sujeta a que se verifique su legalidad en caso de que sea impugnada.
Como ya mencionamos, en caso de que el Estado haya ocupado y confiscado una propiedad, el dueño tiene a su disposición una acción de impugnación de confiscación. En específico, del Art. 15 de la Ley Uniforme de Confiscaciones de 2011 se deduce que si se determinara que la confisca-ción fue ilegal y que no se hizo conforme al procedimiento y a los requisitos necesarios, el remedio provisto por ese es-tatuto para la parte afectada es la devolución de la propie-dad ocupada o el importe de la tasación al momento de la ocupación o la cantidad de dinero por la cual se haya vendido. Ante ese claro lenguaje, es forzoso concluir que no hay cabida para solicitar una causa de acción en daños y perjuicios en el contexto fáctico que nos ocupa. Así lo hemos resuelto anteriormente. Por ejemplo, hemos expresado en *791 varias ocasiones que no procede el pago de intereses ni de partidas por pérdidas o deterioro que surjan a causa de las confiscaciones. Veamos.
En el contexto antes mencionado, e interpretando el Art. 13 de la anterior Ley Uniforme de Confiscaciones de 1988, similar al Art. 19 de la Ley Uniforme de Confiscaciones actual, resolvimos Alejandro Rivera v. E.L.A., 140 DPR 538 (1996). En ese caso se nos presentó una controversia en la cual tuvimos que resolver si procedía el pago de intereses sobre el importe de tasación en aquellos casos en que el Estado devuelve la propiedad confiscada. Resolvimos esa interrogante en la negativa. Puntualizamos que la enton-ces vigente Ley de Confiscaciones proveía dos alternativas, a saber: (1) devolver la propiedad o (2) en caso de que se haya dispuesto de la misma, pagar una suma de dinero. Asimismo, concluimos que correspondía a la Rama Legis-lativa, y no a esta Curia, enmendar esa legislación para extender el pago de intereses a aquellos casos en que se devuelve la propiedad confiscada.
Nótese que en el caso precitado, distinto a lo que inter-pretó el Tribunal de Apelaciones en una de las sentencias apeladas, no admitimos la procedencia de ninguna otra compensación en una acción de impugnación de confiscación.(14) En su dictamen, el foro apelativo expresó que en Alejandro Rivera v. E.L.A., supra, “reconocí [mos] el dere-cho de una persona cuya propiedad fue confiscada ilegalmente a instar un reclamo de daños y perjuicios bajo la Ley Núm. 104 [Ley de Pleitos contra el Estado]”.(15) Todo lo contrario. Los demandantes de ese caso solicitaron el pago de intereses amparándose en el fundamento de que me-diante ello el legislador quiso proveer un mecanismo para resarcir al ciudadano. Alejandro Rivera v. E.L.A., supra, pág. 543. Tras analizar el historial legislativo de la medida *792 que dio origen al Art. 13 de la Ley Uniforme de Confisca-ciones de 1988, acotamos que la intención legislativa fue conceder el pago de intereses únicamente cuando se resarcía al perjudicado mediante una suma en efectivo porque la propiedad no se podía devolver. No dispusimos de una controversia como la que nos presenta este caso.
De igual forma, en Rodríguez Maldonado v. E.L.A., 114 DPR 446 (1983), el Superintendente de la Policía confiscó un vehículo de motor en cumplimiento con las disposiciones de la entonces vigente Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones.(16) El recurrente fue absuelto de la infracción a la Ley de la Bolita por la cual se le acusaba. Por esto, impugnó la confiscación y solicitó que se le compensara por la pérdida de uso y el dete-rioro que sufrió el vehículo por el tiempo transcurrido. Allí resolvimos que el estatuto no confería derecho alguno al dueño para que el Estado le compensara por tal pérdida o deterioro.
Además de lo discutido previamente, es evidente que el reconocimiento de una acción en daños y perjuicios dentro de un procedimiento de impugnación de confiscación des-virtuaría el proceso sumario que el legislador diseñó. Es decir, dentro de ese proceso sumario no se puede litigar una acción en daños y perjuicios. El legislador tuvo dos propó-sitos al establecer la nueva ley. Primero, se propuso dar fin a los procedimientos dilatorios y evitar que los tribunales continúen congestionados por las demandas de impugna-ciones de confiscaciones. P. del S. 897, eventual Ley Núm. 119, supra, Ira Sesión Ordinaria, 16ta Asamblea Legisla-tiva, Exposición de Motivos, pág. 2. Segundo, el legislador quiso evitar que “el transcurso del tiempo deteriore las propiedades confiscadas en perjuicio de sus dueños”. Id.
Para cumplir con estos propósitos, el legislador diseñó un procedimiento sumario con unos términos muy *793 específicos. Así, por ejemplo, el Estado tiene un término jurisdiccional de treinta días desde la ocupación de la propiedad para notificar la confiscación. Art. 13 de la Ley Núm. 119-2011, supra, 34 LPRA sec. 1724j. A su vez, la persona notificada tiene treinta días desde la notificación para presentar el pleito de impugnación. Art. 15 de la Ley Núm. 119-2011, supra. El demandante tiene que emplazar al Secretario de Justicia dentro del término jurisdiccional de quince días contados a partir de la fecha cuando se presentó la demanda. Id. Después de emplazado, el Secretario tiene treinta días para contestar. íd. Luego de la contesta-ción, las partes tienen solo treinta días para el descubrimiento de prueba. íd. El tribunal tiene que adjudicar el pleito de impugnación dentro del término de seis meses desde que se presentó la contestación a la demanda.(17) En fin, el tribunal está obligado a “[tramitar] estas demandas de manera expedita”. Art. 15 de la Ley Núm. 119-2011, supra, 34 LPRA sec. 1724l.
Como se puede apreciar, de acuerdo con el marco jurídico discutido, es evidente que la Asamblea Legislativa ponderó de manera precisa los remedios disponibles en el procedimiento de una impugnación de confiscación instada al amparo de la Ley Uniforme de Confiscaciones ante el hecho de que una confiscación se decrete ilegal. No hay duda de que el texto de la ley no provee para una acción en daños y perjuicios como remedio para una confiscación ile-gal fundamentada en que no procedía la ocupación de la propiedad. Como parte del análisis del historial legislativo, hemos examinado rigurosamente las ponencias presenta-das durante el trámite legislativo del P. del S. 897, que posteriormente se convirtiera en la actual Ley Uniforme de Confiscaciones. De hecho, al analizar las ponencias presen-tadas por los Departamentos de Justicia, Hacienda, Fami- *794 lia y la Policía de Puerto Rico, no se deduce algo que justi-fique proveer como remedio una acción en daños y perjuicios. Asimismo, al estudiar el debate legislativo tam-poco encontramos expresión alguna que apunte a la conce-sión de permitir una acción de ese tipo.
Si permitiéramos la litigación de una acción en daños dentro del proceso de impugnación, no le daríamos efectividad a esa intención legislativa que estamos obligados a respetar. Los pleitos de daños, de ordinario, requieren un descubrimiento de prueba amplio y liberal que consume mucho tiempo. Véase, por ejemplo, Berríos Falcón v. Torres Merced, 175 DPR 962 (2009). Este prolongado descubrimiento de prueba forzaría a las partes y al tribunal a incumplir con los términos estrictos establecidos en la Ley Uniforme de Confiscaciones de 2011. Si las partes no cumplen con los términos establecidos, los tribunales continuarían congestionados con los procesos de impugnación de confiscación y, además, el transcurso del tiempo provocaría el deterioro de las propiedades confiscadas. En fin, la dis-cusión de una acción en daños dentro del proceso sumario de impugnación de confiscación tornaría ineficaz la naturaleza sumaria del proceso.
La contención de la parte recurrida, Doble Seis, es que procede la acción en daños y perjuicios dentro de este pro-cedimiento porque a pesar de que la Ley Uniforme de Con-fiscaciones no provee para una acción de esta naturaleza, tampoco la prohíbe. Este argumento nos invita a ampliar el alcance de la intención legislativa. Una vez más, reite-ramos que esa no es la función que nuestro sistema de separación de poderes le ha delegado a este Tribunal. En todo caso, le corresponde al legislador dentro del ámbito de sus funciones constitucionales considerar una propuesta dirigida a incorporar al texto de la ley esta causa de acción dentro de este tipo de procedimiento.
*795 IV
Por los fundamentos que anteceden, revocamos la sen-tencia del Tribunal de Apelaciones. En consecuencia, resol-vemos que una reclamación en daños y perjuicios contra el Gobierno de Puerto Rico por los alegados daños sufridos a raíz de la ocupación de las máquinas de juegos propiedad de la parte recurrida es improcedente dentro de la acción de impugnación de confiscación.

Se dictará Sentencia de conformidad.

El Juez Presidente Señor Hernández Denton concurrió sin opinión. El Juez Asociado Señor Estrella Martínez disintió mediante la expresión siguiente:
Nuestro ordenamiento procesal cuenta con las herramientas adecuadas para acumular o bifurcar oportunamente las accio-nes ordinarias en daños y perjuicios de los procesos sumarios, según requiera la sana administración de la justicia. Por eso, la ponencia mayoritaria está errada al restringir, por vía ju-risprudencial, el momento en que una persona pueda presen-tar una demanda al amparo del Art. 1802 del Código Civil, 31 LPRAsec. 5141. La base para el raciocinio mayoritario estriba en la intención legislativa de que los procesos de impugnación se resuelvan rápidamente para beneficio de la ciudadanía y evitar el “ataponamiento” de casos en demandas instadas al amparo de esa ley especial. Sin embargo, obvian que el legis-lador en nada alteró las normas procesales dirigidas a restrin-gir cómo y cuándo se puede ejercitar la acción ordinaria en daños y perjuicios. Y es que esa aspiración de política pública invocada por la mayoría no está reñida con permitirle al ciu-dadano, presuntamente afectado por acciones del Estado, que pueda presentar conjuntamente todas sus causas de acción. Todo lo contrario, al permitirlo se satisfacen otros de los pila-res que expresamente incluye la ley especial de confiscaciones y que la mayoría pasa por alto, a saber: proteger la propiedad de los ciudadanos, propiciar que el Estado tenga la totalidad de las imputaciones en su contra para fomentar que se mini-micen los desembolsos de fondos públicos y promover una so-lución justa y económica al ciudadano. Respetuosamente, con-sidero que la fragmentación impuesta por vía jurisprudencial no adelanta ese mandato legislativo. Por lo anteriormente ex-puesto, disiento.

 Atendida la Petición de certiorari presentada por el Estado, el 30 de noviembre de 2012 expedimos el caso CC-2012-0620 y ordenamos su consolidación con el CC-2012-0756.

 Véase Demanda, Apéndice de la Petición de certiorari, CC-2012-0756, pág. 79.

 Íd. Véase, además, Contestación a la demanda, pág. 85.

 Así también, plantearon que cada máquina fue tasada en $300, cantidad que impugnaron tras alegar que su valor era de $4,000 cada una, sin contar los “boards” electrónicos que valoraron en $1,000 cada uno.

 Asimismo, solicitaron la devolución de $154 en efectivo que les incautaron durante la intervención. Véase Demanda, pág. 80.

 Véase Oposición a solicitud de desestimación parcial, Apéndice de la Petición de certiorari CC-2012-0620, pág. 114.

 Asimismo, resolvió que como la operación de máquinas de juegos para adultos es una actividad altamente regulada por el Departamento de Hacienda, el regis-tro administrativo de un negocio estrechamente regulado como el de autos, no requería de una orden judicial previa. Añadió que el Secretario de Hacienda tenía la facultad inherente y el deber ministerial de fiscalizar a los operadores de máquinas de entretenimiento de adultos para asegurar que estos lleven a cabo sus operaciones en conformidad con las leyes y reglamentos. El foro judicial reiteró que esa facultad no se limitaba a verificar que las máquinas tuvieran los marbetes y las licencias requeridas, sino también a corroborar que su operación cumpliera con los parámetros dispuestos por ley.

 Véase Apelación de la petición de certiorari, CC-2012-0620, pág. 51.

 En su contestación a la demanda, el Estado planteó que el Departamento de Hacienda le expidió a la parte demandante unas licencias para la operación de máquinas de juegos electrónicos pero que, al realizar la inspección administrativa, los agentes encontraron que las máquinas que estaban operando eran de entretenimiento para adultos, y que estas, a su vez, funcionaban como máquinas de juegos de azar. Además, argüyeron que ambas carecían de licencia y marbete.

 Medíante Resolución de 30 de julio de 2013, esta Curia concedió a la parte recurrida, Doble Seis Sport TV, Inc., un término de diez días para presentar su alegato en este caso. Cabe mencionar que no recibimos su alegato, por lo que el caso quedó sometido sin el beneficio de su comparecencia.

 El Art. 1 de la Ley 22-1997 enmendó esta sección.

 El título completo de este Reglamento es: “Reglamento para implantar las disposiciones del Subtítulo B- Arbitrios de la Ley Núm. 120 de 31 de octubre de 1994, según enmendada, conocida como ‘Código de Rentas Internas de Puerto Rico de 1994’, promulgado al amparo de la Sección 6130 del Código y de las Secciones 4 y 5 de la Ley Núm. 11 de 22 de agosto de 1933, según enmendada, conocida como ‘Ley de Juegos de Azar’, que facultan al Secretario de Hacienda a adoptar los Reglamentos necesarios para poner en vigor las disposiciones de dicho Código y de dicha Ley; y para derogar el Reglamento Núm. 7215 de 1 de septiembre de 2006”.

 La Ley Núm. 1-2011, conocida como el ‘Código de Rentas Internas,’ está vigente desde el 31 de enero de 2011, Empero, la vigencia de la Sec. 3050.02 es retroactiva al 1 de enero de 2011. En el presente caso, las máquinas fueron incauta-das el 19 de enero de 2011 y el 20 de enero de 2011, respectivamente.

 Sentencia de 19 de julio de 2012.

 Véase Sentencia del Tribunal de Apelaciones, Apéndice de la Petición de certiorari CC-2012-756, pág. 24.

 Ley Núm. 39 de 4 de junio de 1960 (34 LPRA secs. 1721 y 1722).

 Este término solo se puede extender por un término no mayor de treinta días si todas las partes consienten y existe alguna causa justificada. Art. 15 de la Ley Núm. 119-2011, supra, 34 LPRA sec. 1724l.